UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE E. POLIDORI,

        Plaintiff,

                                 Case No. 13-13074

v.

                                 Hon. Patrick J. Duggan

BANK OF AMERICA, N.A.,
Successors in Interest or Assigns,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

      Plaintiff Dwayne Polidori commenced this action against Defendant Bank of America, N.A. ("BANA") in state court seeking to redress alleged improprieties in the foreclosure of his home.  After removing the action to this Court, Defendant filed a motion seeking dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons stated herein, the Court grants Defendant's Motion and dismisses this action with prejudice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Note, Mortgage, and Eventual Foreclosure

On March 31, 2005, Plaintiff Dwayne Polidori accepted a $118,500 loan from Quicken Loans, Inc. ("Quicken"), and, in exchange, executed a promissory note secured by a mortgage on real property located at 721 Champaign, Lincoln Park, Michigan (the "Property"). (Compl. ¶ 1; Note, Def.'s Mot. Ex. 1; Mortgage, Def.'s Mot. Ex. 2.) The mortgage, executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") "solely as nominee for [Quicken (the Lender)] and [Quicken's] successors and assigns[,]" (Mortgage, Def.'s Mot. Ex. 2), was recorded with the Wayne County Register of Deeds on April 11, 2005, at Liber 41443, page 1201. On April 6, 2005, soon after completion of the mortgage transaction, Quicken transferred the loan servicing rights to Countrywide Home Loans, Inc. (Letter, Def.'s Mot. Ex. 3.) On September 21, 2011, MERS assigned the mortgage to BANA, successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Services, LP. (Assignment, Def.'s Mot. Ex. 4.) This assignment was recorded. (*Id.*)

Sometime after obtaining the loan and executing the mortgage, "Plaintiff contacted [BANA] to advise that he was facing financial hardship" and to inquire about the possibility of obtaining a loan modification. (Compl. ¶ 8.) BANA's representative informed Plaintiff that in order to modify the loan, he would have to stop making his monthly mortgage payments. (*Id.* at ¶ 9.) The representative did not, however, explain that failure to remit these monthly payments would cause

2

Plaintiff to default under the terms of the loan agreement.  (*Id.* at ¶ 10.)  While "uneasy with the idea of not making his regularly scheduled payments, [Plaintiff] acquiesced[ because h]e was led to believe that as long as he followed [BANA's] directions, he would be helped."  (*Id.* at ¶ 11.)

Once Plaintiff ceased making his payments, BANA mailed Plaintiff a loan modification package.  (*Id.* at ¶ 12.)  Plaintiff submitted all paperwork requested by BANA and even submitted some documents several times.  (*Id.* at ¶ 13.)  Despite his compliance with and reliance on BANA's instructions, BANA did not approve Plaintiff for a loan modification.  (*Id.* at ¶ 14.)  Instead, BANA initiated foreclosure by advertisement proceedings pursuant to Michigan law.

BANA, acting through its agent, the law firm of Trott & Trott, published a notice of foreclosure in the Detroit Legal News for four consecutive weeks on October 19, October 26, November 2, and November 9 and posted notice of the foreclosure sale on Plaintiff's door on October 20, 2012.  (Aff. of Publication attach. Sheriff's Deed, Def.'s Mot. Ex. 5.)  A sheriff's sale took place on December 20, 2012 and BANA purchased the Property for $150,501.83.[1] (Sheriff's Deed, Def.'s Mot. Ex. 5.)  The statutory redemption period expired on June 20, 2013, with Plaintiff failing to redeem.

---

[1] BANA transferred the Property to Federal National Mortgage Association ("Fannie Mae") by way of a quitclaim deed on January 9, 2013.  (Quitclaim Deed, Def.'s Mot. Ex. 6.)

3

**B.     Court Proceedings**

On June 18, 2013, two days prior to the expiration of the statutory redemption period, Plaintiff initiated this action by filing a complaint in the Circuit Court for Wayne County in Wayne County, Michigan.[2] (Compl. attach. Notice of Removal, Ex. 1 (hereinafter "Compl.").)  BANA timely removed the action to this Court on the basis of federal question and diversity jurisdiction on July 17, 2013. On July 23, 2013, the parties stipulated to extend BANA's time to file an answer or otherwise respond to Plaintiff's Complaint until August 16, 2013 and on that date, BANA filed "Defendant's Motion to Dismiss Complaint" pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant's Motion, which is presently before the Court, seeks dismissal of each of the following counts contained in Plaintiff's Complaint: (1) Count I – Fraudulent Misrepresentation; (2) Count II – Estoppel; (3) Count III – Negligence; (4) Count IV – "Violation of the Fair Debt Collection Practices Act (State)"; and (5) Count V – "Violation of the Fair Debt Collection Practices Act (Federal)."

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under

---

[2] Case No. 13-007975-CH.

the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65,

1974 (2007), the Court must construe the complaint in favor of the plaintiff and

determine whether plaintiff's factual allegations present claims plausible on their

face.  This standard requires a claimant to put forth "enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of" the requisite

elements of their claims.  *Id.* at 557, 127 S. Ct. at 1965.  Even though the complaint

need not contain "detailed" factual allegations, its "factual allegations must be

enough to raise a right to relief above the speculative level."  *Ass'n of Cleveland*

*Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing

*Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also*

Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a

short and plain statement of the claim showing that the pleader is entitled to

relief[.]").

In determining whether a plaintiff has set forth a "claim to relief that is

plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

(2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept

the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S.

Ct. at 1965.  This presumption, however, does not apply to legal conclusions.

*Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to

dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted). In conducting its analysis, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

In the case at bar, the Court has considered documents, all of which are public, relating to the mortgage, the loan modification process, and the foreclosure.

### III.   ANALYSIS

**A.   General Principles Pertaining to Michigan's Foreclosure by Advertisement Statute**

6

Foreclosures by advertisement, such as the foreclosure at issue in this case, as well as the rights of both the mortgagor and mortgagee after a foreclosure sale has occurred, are governed by Michigan statutory law.  *See, e.g.*, *Senters v. Ottawa Sav. Bank, F.S.B.*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993); *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (applying Michigan law) (citation omitted).

Pursuant to Michigan law, a mortgagor has six months from the date of the sheriff's sale to redeem foreclosed property.  Mich. Comp. Laws § 600.3240(8).  Significant consequences flow from a mortgagor's failure to redeem prior to the expiration of the statutory redemption period: the mortgagor's "right, title, and interest in and to the property" are extinguished, *Piotrowski v. State Land Office Board*, 302 Mich. 179, 4 N.W.2d 514, 517 (1942), and the deed issued at the sheriff's sale "become[s] operative, and [] vest[s] in the grantee named therein . . . all the right, title, and interest [] the mortgagor had[,]"  Michigan Compiled Laws § 600.3236.  This rule of law – holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period – has been applied consistently by state and federal courts alike to bar former owners from making any claims with respect to a foreclosed property after the statutory redemption period has lapsed.

7

There is, however, one caveat to the general rule described above.  Once a foreclosure sale has taken place and the redemption period has run, a court may allow "an equitable extension of the period to redeem" if a plaintiff-mortgagor makes "a clear showing of fraud, or irregularity[.]"  *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters*, 443 Mich. at 55, 503 N.W.2d at 643).  Notably, the purported fraud or irregularity must relate to the foreclosure procedure.  *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (1935) (holding that only the foreclosure procedure may be challenged after a sale); *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure procedure).  If a plaintiff seeking to set aside the sheriff's sale demonstrates fraud or irregularity in connection with the statutory foreclosure procedure, the result is "a foreclosure that is voidable, not void *ab initio*."  *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329, 337 (2012).  In order "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply" with Michigan's foreclosure by advertisement statute.  *Id.*  "To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to

8

preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 115-16, 825 N.W.2d at 337 (footnote omitted).

Although the redemption period has expired in the instant case, Plaintiff asks the Court to rescind the sheriff's sale. The posture of this case therefore requires that the Court assess whether Plaintiff's Complaint states a claim upon which relief may be granted within the fraud or irregularity framework outlined above. In other words, the Court must determine whether, under Michigan law, the foreclosure sale is voidable, or could be set aside, on the facts alleged. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (observing that the *Erie* doctrine requires federal courts hearing state law claims to apply the decisions of the state's highest court).

## B.    Setting Aside the Foreclosure Sale

Although Plaintiff's Complaint does not specify the relief sought for each cause of action, the Court construes the first three counts of Plaintiff's Complaint as seeking rescission of the sheriff's sale. The Court analyzes each count *seriatim*.

### 1.    *Count I – Fraudulent Misrepresentation*

In Count I, Plaintiff asserts a claim of fraudulent misrepresentation based on BANA's representation that Plaintiff was eligible for a loan modification. (Compl. ¶ 17; Pl.'s Resp. 6.) Defendant argues that this claim is subject to dismissal for three reasons: (1) the allegations in the Complaint lack the requisite specificity to

9

withstand a motion to dismiss; (2) a future promise cannot support a claim for fraudulent misrepresentation under Michigan law; and (3) the claim is barred by Michigan's statute of frauds.  (Def.'s Br. 10.)  Because the Court agrees with Defendant's first argument, an argument which is dispositive, the Court does not address Defendant's remaining contentions.

In order to state a *prima facie* claim of fraud under Michigan law, "a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury." *Roberts v. Saffell*, 280 Mich. App. 397, 403, 760 N.W.2d 715, 719 (2008).

Beyond containing each of the aforementioned elements, claims of fraudulent conduct must adhere to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b)'s particularity requirement, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("As a sister circuit has phrased it," Rule 9(b) requires a plaintiff to "specify the 'who, what, when, where, and how' of the alleged fraud.") (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Although Plaintiff's Complaint does contain language referencing each element of a *prima facie* claim of fraud, it is otherwise threadbare. The Complaint contains little more than conclusory allegations virtually unsupported by the factual enhancement necessary to put BANA on notice of the claims asserted against it. For example, paragraph 17 provides: "The Bank made a representation to Plaintiff that he was eligible for a loan modification. This was a false representation." (Compl. ¶ 17; *see also id.* at ¶ 20 ("The representation was made with the intention that Plaintiff would act on it.").) Perhaps more fatal to his ability to withstand Defendant's Motion is that Plaintiff's allegations of fraud do not pertain to the foreclosure procedure; rather, the allegations apply only to the loan modification process. *See, e.g.*, *Reid*, 270 Mich. at 267, 258 N.W. at 631. Even if fraudulent conduct in the loan modification process sufficed, Plaintiff's Complaint still fails to state a claim as Plaintiff has not alleged actionable prejudice as required by *Kim*. The Complaint alleges that "Plaintiff . . . suffered damages as a

11

result[]" of defaulting on his loan obligations but the Complaint does not "show that [he] would have been in a better position to preserve [his] interest in the [P]roperty."  (Compl. ¶¶ 23, 22); *Kim*, 493 Mich. at 115-16, 825 N.W.2d at 337.

Having determined that Plaintiff's Complaint falls short of the notice pleading requirements embodied in Rule 8, the Court agrees with Defendant that "[i]t necessarily follows that the allegations . . . fail to satisfy Rule 9(b)'s heightened pleading requirements."  (Def.'s Br. 12.)  The Complaint fails provide the "who, what, when, where, and how" of the alleged fraud and Plaintiff's protestations to the contrary lack merit.  By way of illustration, Plaintiff contends that BANA "knew or should have known" that Plaintiff was not eligible for a loan modification despite informing him otherwise.  (Compl. ¶ 17.)  Plaintiff suggests that BANA should have known because "[a] layperson could have made this determination at the outset without making Plaintiff endure months of financial and emotional turmoil[.]"  (*Id.*)  What Plaintiff fails to explain, however, is how BANA's representative could have made the eligibility determination without the benefit of reviewing Plaintiff's finances.  Additionally, Plaintiff fails to provide when the representation regarding his eligibility was made or who made it.

Count I of Plaintiff's Complaint falls woefully short of stating his fraud claims with particularity.  The Complaint merely contains a formulaic recitation of

12

the elements of fraud under Michigan law, without further facts to substantiate the claims.  As such, the Court dismisses Count I with prejudice.

### 2.      *Count II – Promissory Estoppel*

In Count II, Plaintiff seeks to state a claim for promissory estoppel.  (Resp. 8 (clarifying that Count II is for promissory, not equitable, estoppel).)  While not entirely clear, it appears as though Plaintiff seeks to invoke the doctrine of promissory estoppel, a doctrine sounding in contract law as a means of compensating a party who has partly performed his or her end of the bargain, as a means of rescinding the sheriff's sale.  Defendant argues that the Michigan statute of frauds bars this count as Michigan law applies this statute to "preclude *all* actions for . . . promises and commitments, including actions for promissory estoppel."  *Crown Tech. Park v. D&N Bank, F.S.B.*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000) (emphasis in original).

In order to prevail under a promissory estoppel theory under Michigan law, a plaintiff must establish: (1) a promise; (2) that the promisor reasonably should have expected to induce action of a definite and substantial character on the part of the promisee; (3) that the promise produced an actual reliance or forbearance; and (4) that the claimed reliance or forbearance occurred under circumstances requiring an enforcement of the promise in order to avoid an injustice.  *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151, 166 (2008).  The

13

gravamen of Plaintiff's promissory estoppel count is that BANA promised Plaintiff that his loan would be modified if he ceased making his mortgage payments and that Plaintiff relied on this assurance to his detriment.  (Compl. ¶¶ 25-26 ("[BANA], by its representations, admissions and silence, intentionally or negligently induced Plaintiff to believe that a loan modification was available[ and a]s a result[,] . . . Plaintiff was induced to believe that he could save his Home.").) These assurances, instructions, and promises were verbal.

As Defendant argues, Michigan's statute of frauds precludes Plaintiff's promissory estoppel claim.  (Def.'s Resp. 15.)  Hornbook contract law teaches that certain agreements must be in writing to be enforceable and that a state's statute of frauds supplies the types of agreements that fall within this category.  Michigan's statute of frauds expressly provides that "an action shall not be brought against a financial institution to enforce [a promise or commitment to waive a provision of a loan] unless the promise or commitment is in writing and signed with an authorized signature by the financial institution[.]"  Mich. Comp. Laws § 566.132(2).  Courts interpreting this statute have deemed its language unambiguous, holding that individuals are "precluded from bringing a claim--no matter its label--against a financial institution to enforce the terms of an oral promise to waive a loan provision."  *Crown Tech.*, 242 Mich. App. at 550, 619 N.W.2d at 72 (noting that the statute "specifically bars 'an action[,]' and

14

interpreting the legislature's failure to specify what type of "'action' . . . as an unqualified and broad ban"). This ban applies to claims of promissory estoppel. *Id.* ("[I]t would make absolutely no sense to conclude that the Legislature enacted a new section of the statute of frauds specifically addressing oral agreements by financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements.").

Noticeably absent from Plaintiff's Complaint is any reference to a signed writing evidencing the purported promise to modify Plaintiff's loan. This is fatal to his claim as Michigan Compiled Laws § 566.132(2) clearly and unambiguously imposes an evidentiary burden for any claims brought to enforce a promise or agreement by a financial institution. While Count II may be a "creative attempt[] at skirting [this] evidentiary burden[,] . . . Plaintiff may not circumvent the statute of frauds by framing his claim in an inventive way." *Vittands v. Bank of Am., N.A.*, No. 11-cv-15241, 2012 U.S. Dist. LEXIS 67651, at *11-12 (E.D. Mich. May 15, 2012) (Rosen, C.J.) (internal citations omitted); *Saad v. Wayne Cnty. Register of Deeds*, No. 11-15590, 2013 U.S. Dist. LEXIS 95218, at *20-21 (E.D. Mich. July 9, 2013) (Cohn, J.) (granting motion to dismiss claims based on an alleged promise of a loan modification as barred by the statute of frauds and collecting cases).

Having failed to plead facts or present evidence tending to show that BANA signed a loan modification document embodying the oral promise alleged, Plaintiff's promissory estoppel count necessarily fails.

### 3.      Count III – Negligence

Count III is related to Counts I and II insofar as it rests on the oral representations BANA made to Plaintiff with regard to his eligibility for a loan modification.  Plaintiff asserts that BANA was negligent because it breached the duty it owed to Plaintiff "to conduct a reasonable inquiry as to whether he would be able to qualify for a loan modification."  (Compl. ¶ 32.)  Defendant argues that this claim is subject to dismissal and the Court agrees.

To state a *prima facie* case of negligence in Michigan, a plaintiff must allege four elements: duty, breach, causation, and damages.  *Lelito v. Monroe*, 273 Mich. App. 416, 418-19, 729 N.W.2d 564, 566 (2006).  Plaintiff cannot establish that BANA owed him a duty.  *See Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 463, 683 N.W.2d 587, 590 (2004) (whether a duty exists is a question of law).

Michigan Supreme Court precedent holds that in "tort actions based on a contract," such as the case here, "courts should use a 'separate and distinct' mode of analysis."  *Id.* at 467, 683 N.W.2d at 592.  In this analysis, "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.  If no independent duty

16

exists, no tort action based on a contract will lie." *Id.*; *see also Ulrich v. Fed'l Land Bank of St. Paul*, 192 Mich. App. 194, 198, 480 N.W.2d 910, 912 (1991) (per curiam) ("It has often been stated that the sometimes hazy distinction between contract and tort actions is made by applying the following rule: if a relation exists that would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise it will not.") (citations omitted).

Here, Plaintiff has not alleged that Defendant owed him a duty separate and distinct from the contractual obligations. While Plaintiff does allege that BANA owed him a duty "to conduct a reasonable inquiry as to whether he would be able to qualify for a loan modification[,]" (Compl. ¶ 32), no such duty exists under Michigan law. *Ulrich*, 192 Mich. App. at 199-200, 480 N.W.2d at 912 (holding that, under the circumstances presented,[3] a lending institution did not owe a

---

[3] In *Ulrich*, the Court explained that the defendant-lender did not owe the plaintiff-borrowers a duty of care with respect to determining loan eligibility because it had "already determined that no fiduciary duties existed between the parties on the facts alleged by plaintiffs." *Ulrich v. Fed'l Land Bank of St. Paul*, 192 Mich. App. 194, 199, 480 N.W.2d 910, 913 (1991). Having found no fiduciary duties, the Court "decline[d] to create what is essentially a backdoor defense to the enforcement of plaintiffs' obligations by allowing plaintiffs to later claim that [defendant] acted negligently[.]" *Id.*

The Court finds *Ulrich* instructive as Plaintiff has not alleged facts or provided legal authority to overcome the general rule in Michigan that "there is generally no fiduciary relationship between a mortgagor and a mortgagee." *Coyer v. HSBC Mortgage Servs., Inc.*, No. 11-2378, slip op. at *4 (6th Cir. Nov. 13, 2012) (per curiam) (applying Michigan law) (citing *Sallee v. Fort Knox Nat'l Bank, N.A. (In re Sallee)*, 286 F.3d 878, 893 (6th Cir. 2002)).

17

borrower a duty of care with respect to determining the borrower's eligibility for a

loan).  Because no such duty exists, it follows that any purported duty must arise

pursuant to the note and mortgage.  Without any "independent duty[,]" that is a

duty divorced from the governing contract, Plaintiff has not stated a claim for

negligence.  *Fultz*, 470 Mich. at 467, 683 N.W.2d at 592; *see also id.* at 463, 683

N.W.2d at 590 ("It is axiomatic that there can be no tort liability unless defendants

owed a duty to plaintiff.") (citation omitted).

## C.  Plaintiff's Claims under the Michigan Occupational Code and the Federal Fair Debt Collection Practices Act ("FDCPA")

The Court addresses Plaintiff's remaining claims together as they rely on the

same facts and both involve debt collection practices.  In Count IV, Plaintiff

alleges that BANA violated the Michigan Occupational Code, specifically

Michigan Compiled Laws § 445.252(e), by mailing a statement (a "debt validation

letter") to Plaintiff regarding the validity of his debt while Plaintiff was attempting

to obtain a loan modification.  (Pl.'s Resp. 12; *see also* Compl. ¶ 40 ("Defendant

intentionally mailed to Plaintiff a statement specifying that unless [] Plaintiff,

within 30 days after receipt . . . , disputes the validity of the debt, or a portion of

the debt, the debt will be assumed to be valid.").)  In Count V, Plaintiff alleges that

the timing of the aforementioned letter violated the FDCPA, 15 U.S.C. § 1692e,

which prohibits debt collectors from employing "false, deceptive, or misleading

representation[s] or means in connection with the collection of any debt."  While

not phrased as such, the Court believes that Plaintiff is endeavoring to argue that the portion of the debt caused by his reliance on BANA's instruction to cease remitting his mortgage payments in order to obtain a loan modification is invalid but that Plaintiff would not contest the validity of that debt while simultaneously seeking to modify his loan.  (*See* Pl.'s Resp. 12.)  According to this theory, BANA, knowing that Plaintiff would not challenge the debt caused by the default, intentionally and deceptively sent the letter when it did so that the debt would be deemed valid.  (*Id.*)

Defendant contends that Count IV must be dismissed because BANA is not a "collection agency" as defined in the Michigan Occupational Code.  (Def.'s Br. 19.)  Michigan Compiled Laws § 339.901(b) defines a collection agency as "a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another . . . ."  Specifically excluded from this definition are those "whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as . . . [a] state or nationally chartered bank when collecting its own claims."  Mich. Comp. Laws § 339.901(b)(ii).

At the time BANA sent Plaintiff the debt validation letter, the underlying debt was owed to BANA.  BANA received the mortgage by way of an assignment

from MERS on September 21, 2011.  (Assignment, Def.'s Mot. Ex. 4.)

Foreclosure by advertisement proceedings began in October 2012, the sheriff's sale

occurred on December 20, 2012, (Sheriff's Deed, Def.'s Mot. Ex. 5), and BANA

quitclaimed the Property to Fannie Mae on January 9, 2013, (Quitclaim Deed,

Def.'s Mot. Ex. 6).  As these facts demonstrate, BANA cannot be deemed a

collection agency subject to regulation under the Michigan Occupational Code as it

owned the debt and was therefore not attempting to collect debt owed to another.

This leaves Plaintiff's FDCPA claim.  BANA argues that Count V fails on

the merits because BANA was not acting as a "debt collector" as defined by the

FDCPA, but rather in the course of its business as the entity to which the debt was

owed.[4]  Earlier this year, the United States Court of Appeals for the Sixth Circuit

held that a mortgage foreclosure is "debt collection" subject to the FDCPA.

*Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 455 (6th Cir. 2013).  This does

not, however, mean that any entity involved in a mortgage foreclosure is a debt

collector.  As defined in the FDCPA, "[t]he term 'debt collector' means any person

---

[4] BANA also argues that it does not qualify as a debt collector because it falls within the provision of 15 U.S.C. § 1692a(6)(F)(iii), which exempts "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  This argument appears to relate to the servicing of the loan.  The Sixth Circuit has held that this exception applies to mortgage servicers, regardless of whether they own the debt obligation they service.  *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 457 (6th Cir. 2013).  However, having determined that BANA was a creditor and therefore not subject to the FDCPA, the Court need not address this argument.

. . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A bank that owns the debt to be collected is "a creditor[,] . . . not a debt collector for the purposes of the FDCPA[,] and creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (quotation and additional citations omitted).

Plaintiff's own allegations support a finding that BANA was the owner of the mortgage at the time the allegedly deceptive letter was sent (for example, Plaintiff alleges that BANA sent the letter while Plaintiff was attempting to modify his loan with BANA). Such allegations plainly defeat any attempt to hold BANA liable for violating the FDCPA. Accordingly, the Court dismisses Counts IV and V with prejudice.

**D.    Relief Sought**

In his prayer for relief, Plaintiff seeks to set aside the sheriff's sale, an order staying any and all proceedings related to the Property until the matter has been resolved, an order rescinding the mortgage loan or, alternatively, an order granting reformation of the loan, money damages, and costs and attorney's fees. Plaintiff has alleged neither facts nor a legal basis supporting application of any of these

21

remedies.  Because Plaintiff has failed to state a claim on any of the five counts contained in his Complaint, Plaintiff is not entitled to any relief. [5]

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiff's Complaint fails to state a claim for relief on any of the counts included therein.

Accordingly,

**IT IS ORDERED THAT**, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.


Date:  October 15, 2013

                           s/PATRICK J. DUGGAN
                           UNITED STATES DISTRICT JUDGE

Copies to:

**Renette Jackson, Esq.**
**Joshua C. Castmore, Esq.**
**Jong-Ju Chang, Esq.**
**T. L. Summerville, Esq.**

---

[5] This conclusion precludes the necessity of addressing BANA's argument that the doctrine of unclean hands bars Plaintiff from obtaining equitable relief. (Def.'s Br. 24-25.)